# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTHONY JOYNER, #407-272,    *

Petitioner,    *

v.    *    Civil Action No. JKB-17-1118

WARDEN and    *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,    *

Respondents.    *

    ***

## MEMORANDUM

Anthony Joyner, currently confined at the Jessup Correctional Institution in Jessup, Maryland, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Joyner's 2012 conviction in the Circuit Court for Montgomery County, Maryland, for carjacking and robbery. *Id.* Respondents filed a Response in which they sought denial of the Petition on the basis that Joyner's claims cannot be considered due to procedural default and that they otherwise fail on the merits. ECF No. 9. Subsequently, Joyner filed a Reply to the Response. ECF No. 17. He later submitted a second Reply addressing Respondents' argument that he had raised procedurally defaulted claims. ECF No. 28. Joyner also filed a Motion for Evidence Hearing (ECF No. 29), Motion for Default Judgment (ECF No. 30), and Motion for Respondents to Comply with Court's Orders (ECF No. 31).

The Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). Thus, Joyner's Motion for Evidence Hearing shall be denied. For the reasons that follow, Joyner's Motion for Default Judgment and Motion for Respondents

to Comply with Court's Orders shall also be denied.  Joyner's Petition is denied and dismissed, and a certificate of appealability shall not issue.

## I.    Factual and Procedural Background

### A.    Prior Proceedings

On February 14, 2012, Joyner was convicted of carjacking and robbery based on evidence showing that he assaulted a woman and took her vehicle.  *See* ECF No. 9-5, p. 65.  The facts at Joyner's trial in the Circuit Court for Montgomery County, as adduced by the Court of Special Appeals of Maryland, are summarized as follows:

> On November 20, 2009, as Joan Sidell was about to enter her car, a man came up to her and demanded her purse and car keys.  She resisted and a struggle ensued, during which the man hit her in the mouth and broke one of her teeth.  The man took her purse and drove off in her car.  Her neighbor, David Yeargin, then came to her aid and called the police.  Police recovered her car that same day.  The next day, she discovered a cap behind the driver's seat of her car.  Because she did not recognize the cap, she turned it [in to] police.  The police eventually recovered her purse as well, but at least $100 was missing from it.

> Approximately nine months after the carjacking, police showed Yeargin a photo array, which included a picture of the appellant.  Detective Charles Hoetzel testified that Yeargin identified the appellant after viewing the array for only approximately 50 seconds.  Prior to identifying appellant, Yeargin testified that the police indicated that they had DNA evidence and thought they knew who committed the crime.  A few days later, Carl Snowden, another witness to the carjacking, was shown the same photo array.  It is unclear how long it took Snowden to identify the appellant.  Prior to Snowden identifying the appellant, Officer Jeffrey Demuth mentioned that the police have a suspect and that there had been a DNA match.
>
> *    *    *
>
> Erin Farr, a forensic biologist in the Montgomery County Crime Laboratory, testified that she collected a DNA sample from the interior rim of the cap found in [Sidell's] car and a swab of the steering wheel.  Both the sample of the cap and steering wheel indicated mixed DNA profiles, meaning DNA from more than one individual.  Appellant's DNA was represented in both samples.

> Farr concluded that appellant was the source of the major DNA profile obtained from the interior of the hat.  Moreover, Farr explained that the major source of DNA found on the steering wheel was likely appellant's because the probability of randomly selecting an unrelated individual is approximately one in

17 million in the African American population. The prosecution used Farr's testimony in its closing statement and rebuttal to tell the jury to convict appellant based on DNA evidence.

ECF No. 9-10, pp. 2-4. On August 30, 2012, Joyner was sentenced to an aggregate of 20 years of incarceration. *See* ECF No. 9-7, p. 21.

Joyner appealed his judgment of conviction to the Court of Special Appeals, raising, through counsel, the following issues:

1. Did the lower court err in denying Appellant's motion to suppress evidence of identification?

2. Did the court commit plain error in failing to take any curative action with respect to the State's improper statements in closing and rebuttal argument that misrepresented the State's DNA evidence?

*See* ECF No. 9-8, p. 8. In an unreported opinion filed on October 8, 2013, the Court of Special Appeals affirmed Joyner's convictions. *See* ECF No. 9-10.

Joyner then filed a petition for a writ of certiorari requesting that the Court of Appeals of Maryland further review his case, raising the same two issues he presented to the Court of Special Appeals. *See* ECF No. 9-11. On January 27, 2014, the Court of Appeals denied Joyner's petition. *See id.* at p. 34; *Joyner v. State*, 436 Md. 502 (2014).

On May 16, 2014, Joyner filed a pro se petition for post-conviction relief, which he amended several times. *See* ECF Nos. 9-1, 9-12, 9-13, 9-14, 9-15 & 9-16. On October 5, 2015, Joyner filed a supplemental petition, which the post-conviction court considered to be a "Superseding Petition," as Joyner restructured the arguments presented in his original petition and all subsequent amendments into this single document. *See* ECF Nos. 9-12 to 9-17, 9-19. Joyner then filed a second supplemental petition on December 21, 2015. ECF No. 9-18. In sum, Joyner argued:

I. Pre-trial counsel was ineffective for: (1) failing to investigate a violation of the Interstate Agreement on Detainers ("IAD"); (2) failing to request dismissal of the case after the prosecution failed to hold a hearing within 180 days; (3) failing to challenge the DNA and arrest warrants; (4) failing to move to suppress the baseball cap, which was seized following an unlawful search of Sidell's vehicle; (5) not allowing Joyner to be present at a preliminary hearing to confront witnesses; (6) failing to object to the use of DNA evidence; and (7) providing incorrect information regarding the State's plea offer.

II. Trial counsel was ineffective for: (1) allowing Joyner to stand trial in prison wear; (2) failing to object to the State's use of DNA evidence; (3) failing to give an opening statement and for giving an improper closing argument; (4) failing to enter his appearance at sentencing; and (5) failing to review all of the evidence for proper presentation to the jury.

III. Appellate counsel was ineffective for: (1) failing to challenge the alleged violation of the IAD; (2) failing to raise on appeal the fact that Joyner wore a prison jumpsuit during the trial; and (3) failing to challenge an incorrect jury instruction given by the trial court.

IV. The State committed prosecutorial misconduct by: (1) failing to disclose, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that Yeargin's identification was "made under suggestive circumstances;" and (2) compelling perjured testimony regarding the photo array identification and fraudulent DNA evidence.

V. The trial court erred in failing to award sentencing credit for time spent while being held on a detainer.

ECF Nos. 9-17 & 9-18.

After a hearing on July 28, 2016, the circuit court denied Joyner's petition on September 1, 2016. *See* ECF No. 9-19. Joyner claims that he did not receive the court order denying his petition in a timely manner and, therefore, his appeal was also untimely. *See* ECF No. 1, p. 3; ECF No. 28, p. 1. On November 10, 2016, Joyner filed a "belated" application for leave to appeal, stating that he "learned on October 24, 2016 by third party that the Montgomery County Circuit Court issued an order on September 1, 2016 denying . . . Post-Conviction Relief." ECF 9-20, p. 2. Joyner argued that police used false information to secure a warrant for his

arrest, that he was extradited to Maryland in violation of the IAD, and that the prosecutor compelled perjured testimony at trial. *Id.* at p. 1. The Court of Appeals dismissed Joyner's application as untimely on January 4, 2017. *See* ECF No. 9-21 (citing Md. Rule 8-204(b)(2)(A) (stating that an application for leave to appeal "shall be filed within 30 days after entry of the judgment or order from which the appeal is sought")).

B.     <u>Claims in this Court</u>

By his petition for writ of habeas corpus filed in this Court, Joyner claims that he is being detained in state custody illegally and recasts the arguments he presented to the post-conviction court. *See* ECF No. 1. First, Joyner alleges that his pre-trial and trial attorneys were ineffective for (a) failing to litigate pre-trial motions challenging the veracity of the arrest warrant and DNA warrant, and challenging the warrantless search of the car and seizure of a baseball cap therefrom, in violation of his Fourth Amendment rights; (b) failing to object to his appearance at trial in prison wear and to the State's use of a buccal swab to take a DNA sample, in violation of his Fifth Amendment rights; (c) failing to seek dismissal of his charges for failure to comply with the IAD, as well as depriving him of his right to confront three State's witnesses at a suppression hearing, to cross-examine a State's key witness, and to challenge the State's DNA evidence, in violation of his Sixth Amendment rights; and (d) failing to object to the State's improper statements during closing argument and rebuttal and giving improper advice about the prosecution's plea offer, which was based on inaccurate information, in violation of his Fourteenth Amendment rights. *Id.* at 5; ECF No. 1-1. Second, Joyner argues that appellate counsel was ineffective for failing to appeal from the trial court's failure to instruct on "reasonable doubt." Third, Joyner alleges prosecutorial misconduct in violation of his Fourteenth Amendment rights. ECF No. 1-1. Specifically, Joyner claims that the prosecutor

improperly presented perjured testimony at trial, and committed a *Brady* violation by improperly withholding evidence. *Id.* Fourth, Joyner alleges that the trial court erred when it failed to give him pre-trial credit at sentencing for time spent while being held on a detainer, thus violating his Fourteenth Amendment rights. *Id.*

      C.    <u>Exhaustion</u>

As a threshold matter, a petitioner seeking habeas relief in federal court must exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1) (2012); *Rose v. Lundy*, 455 U.S. 509, 510 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, this may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert it in an appeal to the Court of Special Appeals of Maryland and then to the Court of Appeals of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301 (West 2011). To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Crim. Proc. § 7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Respondents do not assert that Joyner has available direct appeal or state post-conviction remedies for any of the claims raised here. ECF No. 9, p. 15. The Court agrees. Joyner filed a direct appeal of his conviction to the Court of Special Appeals and further filed a petition for a writ of certiorari to the Court of Appeals. In addition, Joyner filed a petition for post-conviction

relief, which the circuit court denied and which the Court of Appeals declined to review. Thus, Joyner has exhausted state court remedies.

D.   <u>Procedural Default</u>

Where a petitioner has exhausted his available state remedies, a court must then determine whether the procedural default doctrine applies to bar federal review of one or more of his claims. A claim is procedurally defaulted if a petitioner has failed to present it to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines to consider the merits of a claim "on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999) (citation omitted).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may still address the merits of a state defendant's habeas claim if the petitioner can show both cause for the default and actual

prejudice that would result from failing to consider the claim on the merits. *See Murray*, 477 U.S. at 494-95; *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

In replying to Respondents' argument that his claims are procedurally defaulted, Joyner avers that he "did not actually receive a timely notice of decision from the court or institutional officials to actually comply with a timely application for leave to appeal" the post-conviction court's ruling. ECF No. 28, p. 1. To the extent Joyner's reason for the delay in filing his appeal could be considered "cause" sufficient to excuse him for the default, this Court shall proceed to address the merits of his claims. *See Breard*, 134 F.3d at 620.

## II.    Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The

standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also Virginia v. LeBlanc*, __ U.S. __, __, 137 S. Ct. 1726, 1728 (2017); *White v. Woodall,* __ U.S.__, __, 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the

record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010) (citation omitted). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (emphasis and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (citation omitted).

### III. Analysis

#### A. Ineffective Assistance

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner

alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

As the Supreme Court held in *Strickland*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d) [now § 2254(e)(1)]." *Id*. at 698. Rather, "[a]lthough state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It then follows that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

Joyner alleges ineffective assistance on the part of his pre-trial, trial, and appellate attorneys.

With regard to his claims that pre-trial counsel rendered ineffective assistance by failing to investigate the notice requirements of the IAD, that trial counsel rendered ineffective assistance by failing to request dismissal of the charges with prejudice for failure to comply with the IAD, and that appellate counsel rendered ineffective assistance of counsel by failing to investigate compliance with the IAD, the post-conviction court found:

> that Petitioner was transferred from the custody of the Commonwealth of
> Kentucky to the custody of the State of Maryland based on the Interstate

Agreement on Detainers; that [pre-trial counsel] investigated and discussed issues relative to the IAD with Petitioner, including eyewitness identification issues; that based on discussions between Petitioner and [pre-trial counsel], Petitioner waived any issues related to the IAD as well as the 180-day requirement; that based on [pre-trial counsel's] experience and knowledge of the case, he did not object to the information contained in the detainer because he had no reason to believe it was inaccurate or misrepresented; that [appellate counsel] investigated the sufficiency of the detainer and recalls viewing the necessary documentation required for transferring an inmate under the IAD; . . . that no evidence was presented that would support a challenge to the detainer; . . . that the Court finds Petitioner's jurisdictional allegations meritless because the predicate facts were not proven[.]

ECF No. 9-19, p. 3.

The post-conviction court's findings are supported by the record and survive scrutiny. During a hearing on November 10, 2011, pre-trial counsel requested a postponement of the case "in order to round up information that [Joyner wanted] him to have available for trial." ECF No. 26-1, p. 7. When asked whether he would be "willing to waive [his] right to be brought to trial within the November 22nd date under the interstate agreement on detainers," Joyner responded, "Yes, sir." *Id.* at pp. 7-8. Joyner also affirmed that "nobody's made any threats . . . to get [him] to waive that right." *Id.* at p. 8.

Moreover, during the post-conviction hearing, pre-trial counsel testified that he "examined" the validity of the IAD and did not "see anything that was wrong with the procedural part of the IAD." ECF No. 26-2, pp. 12 & 56. Likewise, appellate counsel testified that he "look[ed] into that issue" upon Joyner's request and spent "some time" on the matter as he had never briefed an issue involving the IAD. *Id.* at pp. 64-65. As such, the post-conviction court's denial of Joyner's claim was based on a reasonable application of *Strickland*.

Next, as to Joyner's claim that pre-trial counsel rendered ineffective assistance for failing to litigate pretrial motions challenging the veracity of the arrest warrant and DNA warrant, and

for failing to litigate pretrial motions challenging the warrantless search of the victim's car and

the seizure of a baseball cap therefrom, the post-conviction court stated:

> that [pre-trial counsel] testified that he verified the arrest warrant and the DNA warrant (buccal swab) and did not object based on his investigation and his determination, that there was no meritorious defense arising from the arrest warrant or the DNA warrant; that [pre-trial counsel] believes that the hat was turned in to the police by the victim upon the return of the victim's car and that it was not found in the car during a police inventory search; that [the prosecutor] testified that the contents of the warrants align with her recollection of the timeline of events; and it is further
>
> STATED, that based upon counsel's experience and belief, he saw potential avenues of defense at trial, namely identification issues, rather than challenging the search of the victim's car during pretrial motions; and it is further
>
> STATED, that the Court finds Petitioner's Fourth Amendment allegations meritless because the predicate facts were not proven[.]

ECF No. 9-19, p. 4.

Once again, the post-conviction court denied Joyner's claim based on a reasonable

application of the *Strickland* standard to the facts presented. During the post-conviction hearing,

pre-trial counsel testified that he reviewed the arrest warrant. ECF No. 26-2, p. 25. Pre-trial

counsel also stated that he reviewed the DNA warrant and found that it "appeared to be" valid,

*id.* at pp. 36-37, though he "saw potential avenues of defense in an ultimate trial." *Id.* at p. 35.

Based on this record, there is no merit to Joyner's claim that pre-trial counsel rendered

ineffective assistance in this regard.

With regard to Joyner's claim that trial counsel rendered ineffective assistance for failing

to object to his appearance at trial in prison wear, the post-conviction court found:

> that the transcript reflects that the testifying witness identified Petitioner in court as, "[t]he gentleman wearing the green jumpsuit to my left" (February 14, 2012 Trial Transcript at 37); that the State stipulates to said statement; that [trial counsel] did not opine on Petitioner's question of whether it was a "good idea" to ask the jury pool whether prospective jury members would judge a defendant fairly and impartially if that defendant was wearing a prison jumper, but opined

that impartial jurors are selected after a proper voir dire; that [trial counsel] does not believe the jurors found Petitioner guilty based on the fact that Petitioner was wearing a green jumpsuit during trial because the jury listened to the facts of the case and sat as reasonable jurors; that credibility was not a prime factor in the jury's decision because of the witness identifications, the "overwhelming" facts as to "whether or not Mr. Joyner was guilty or innocent," and [trial counsel's] opinion that, "Mr. Joyner got a very good defense with what he left me"; that no evidence was presented to support Petitioner's allegations regarding a failure of counsel [to] present an opening or closing argument[.]

ECF No. 9-19, pp. 4-5. The post-conviction court then ruled:

that, "[t]he presumption of innocence, however, is not impermissibly impaired every time a defendant stands trial before a jury in prison attire." *Knott v. State*, 349 Md. 277, 287 (1998) (citations omitted). "Essential to a finding of a constitutional violation is the element of compulsion." *Id.* "That is, the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire." *Id.* "Compelling a defendant to stand trial in identifiable prison attire impairs that presumption because it serves as a 'constant reminder' that the accused is in custody, and presents an unacceptable risk that the jury will consider that fact in rendering its verdict." *Id.* at 286. "Stating that *Estelle* [*v. McGuire*, 502 U.S. 62, 67-68 (1991)] violations are subject to harmless-error analysis, the court went on to hold that the defendant's being compelled to stand trial in prison garb was harmless beyond a reasonable doubt." *Id.* at 290 (discussing *United States v. Hurtado*, 47 F.3d 577 (2d Cir. 1995). "To support this conclusion, the court, inter alia, pointed to the fact that the evidence adduced at trial, including certain admissions by the defendant, overwhelmingly demonstrated the defendant's guilt." *Id.* . . .

STATED, that Petitioner was wearing his prison attire during the trial proceedings; that no evidence of Petitioner's objection to his prison attire at trial was presented during the post-conviction proceeding, and the trial record does not reflect any such objection; that this Court finds that Petitioner was not compelled to wear prison attire during trial; that the in-court identification of Petitioner as, "[t]he gentleman wearing the green jumpsuit to my left" evinces the fact that a witness, and presumably the jury, identified Petitioner's trial garb as prison attire (February 14, 2012 Trial Transcript at 37); that even if Petitioner was compelled to testify in prison attire over his objection, this case was not a credibility battle, and evidence at trial was overwhelming to the extent of witness identifications and DNA evidence linking Petitioner to the crime, as corroborated by testimony taken at the post-conviction proceeding; and it is further

STATED, that the Court finds that any Fifth Amendment error was harmless error[.]

ECF No. 9-19, pp. 5-6.

The post-conviction court's denial of Joyner's claim was not improper.  During the post-conviction hearing, trial counsel explained:

> Montgomery County[] has a policy.  That policy I have no control over as a trial attorney.  If you don't change clothes at the jail or don't have clothes at the jail, you come as they dress you at jail.

ECF No. 26-2, p. 96.  Here, Joyner presented no evidence to show that he objected to wearing his prison jumpsuit at the time of trial.  Moreover, trial counsel noted that during voir dire, the jury was asked whether "they would judge fairly a defendant dressed in a jumper" and "if they all said we can sit fairly and impartially" then the trial proceeded.  *Id.* at p. 97.  As Joyner had been identified by two separate witnesses, and because there was DNA evidence to support his conviction, the post-conviction court's determination – "that even if Petitioner was compelled to testify in prison attire over his objection, this case was not a credibility battle" – survives scrutiny.  *See id.* at p. 101.

Joyner's next claim is that pre-trial counsel rendered ineffective assistance by depriving him of his right to confront three witnesses at the suppression hearing and by not objecting to inconsistent testimony regarding a photo array witness identification.  During the post-conviction hearing, pre-trial counsel explained that he chose to proceed with the suppression hearing without Joyner being present "for strategy reasons."  ECF No. 26-2, p. 50.  Specifically, "the idea was not to have the witness testify at the suppression hearing and make another identification."  *Id.*  With regard to the photo array identification, pre-trial counsel testified that he believed the date the identification was made, as written on the document, was "pretty much consistent with the witness's testimony."  *Id.* at p. 62.  Thereafter, the post-conviction court found:

> that [pre-trial counsel] testified that he recommended Petitioner waive the right to be present at the suppression hearing to prevent any witnesses from proffering an

additional in-court identification of Petitioner; that [pre-trial counsel] believes this to be a reasonable decision under the circumstances; that [pre-trial counsel] did not object to certain inconsistent testimony at the suppression hearing because any inconsistent testimony would be more forceful for impeachment purposes during trial; . . . that it was a tactical decision for [pre-trial counsel] to advise Petitioner not to be present at the Suppression hearing to avoid an additional in-court identification of Petitioner; and . . . that the Court finds Petitioner's Sixth Amendment allegations meritless because the predicate facts were not proven[.]

ECF No. 9-19, pp. 6-7.

The post-conviction court thus concluded that pre-trial counsel had sound tactical reasons for his actions, a determination that is supported by the record. The fact Joyner disagrees with his attorney's strategy does not establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 689. The post-conviction court's determination that counsel's actions were not constitutionally deficient is entitled to deference and will not be disturbed.

Next, as to Joyner's claim that pre-trial counsel rendered ineffective assistance by giving improper advice about a plea offer that was based on inaccurate information, the post-conviction court found "that Petitioner abandoned the allegations of error pertaining to sentencing and to guilty plea negotiations in failing to present definable evidence to support such allegations." ECF No. 9-19, pp. 8-9. Because Joyner failed to present any evidence to support this claim, it is considered abandoned or waived and is, thus, subject to denial.

Joyner's next claim is that appellate counsel rendered ineffective assistance by not raising on appeal the issue of the trial court's instructions to the jury. Specifically, Joyner contends that the trial court improperly gave the jury a "Written Civil Procedure End of Trial Instruction for deliberations having no instructions on reasonable doubt." ECF No. 1-1, p. 1. During the post-conviction hearing, appellate counsel testified that he "discussed these instructions" with Joyner and he did not "recall seeing any issue with respect to the instructions that were given from the Bench." ECF No. 26-2, p. 67. Thereafter, the post-conviction court found:

that [appellate counsel] testified that he discussed with Petitioner the civil jury instructions as a potential issue, but that he cannot recall whether the civil jury instructions were the final instructions submitted to the jury; that [appellate counsel] believes it is possible he mistakenly placed civil jury instructions into Petitioner's file because, "sometimes documents end up in files that should not be there"; . . . that Petitioner has not provided evidence that incorrect jury instructions were submitted to the jury; and . . . that the Court finds Petitioner's improper jury instructions allegation meritless because the predicate facts were not proven[.]

ECF No. 9-19, p. 8.

It is well established that the question on collateral attack is whether the missing or challenged instruction so infected the entire trial that the resulting conviction violated due process. *Smith v. Bordenkircher*, 718 F.2d 1273 (4th Cir. 1983), *cert. denied*, 466 U.S. 976 (1984); *see Gaskins v. McKellar*, 916 F.2d 941 (4th Cir. 1990), *cert. denied*, 500 U.S. 961 (1991); *United States v. Velazquez*, 847 F.2d 140 (4th Cir. 1988); *United States v. Love*, 767 F.2d 1052, 1060 (4th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986). Equally accepted is the notion that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury.'" *Id.* at 1276 (4th Cir. 1983). As Joyner has failed to show what instruction was actually given, this Court cannot conclude that the lack of "instructions on reasonable doubt," even if true, so infected the entire trial. Therefore, the post-conviction court correctly found Joyner's claim to be meritless.

Lastly, with regard to Joyner's contention that trial counsel was ineffective for failing to object to the prosecutor's improper closing and rebuttal, the post-conviction court made no findings. Joyner's underlying argument was that the State improperly misrepresented the strength of its DNA evidence when it made the following pronouncements:

1) [Joyner] left his DNA on the steering wheel;

2) [Joyner had] been on the steering wheel;

3) The person [Yeargin] identified is the person who's [*sic*] DNA is in the vehicle; and

4) You have DNA evidence that [Joyner is] the person who was in that car.

*See* ECF No. 1-1, p. 1; ECF No. 9-10, pp. 7-8. A review of the post-conviction transcript, however, shows that Joyner did not present any evidence to support this allegation during the post-conviction hearing.

In any event, Joyner raised this issue on direct appeal to the Court of Special Appeals, which found that "[t]he statements at issue did not compromise appellant's right to a fair trial" as "the State's slight misstatements regarding DNA evidence . . . constitute harmless error." ECF No. 9-10, p. 8. This Court agrees. As the Court of Special Appeals explained:

> During trial, Farr [the forensic biologist] testified that the police recovered appellant's DNA on a hat in the stolen car, and recovered another DNA sample from the steering wheel of the stolen car. Although Farr did not testify that appellant's DNA was an exact match with the DNA found on the steering wheel, the jury could infer that appellant's DNA was on the steering wheel of the stolen car. According to Farr's testimony, the probability of randomly selecting an unrelated individual is approximately one in 17 million in the African American population, or that 99.99999942 percent of the African population would be excluded from the DNA profile. The near scientific certainty of appellant's DNA being on the steering wheel renders the State's arguments harmless.

*Id.*

In sum, based upon the record before this Court, Joyner is not entitled to relief. The post-conviction court's decision withstands scrutiny under 28 U.S.C. § 2254(d). The court's determination that Joyner failed to meet his burden of establishing that his attorneys' representation was deficient or prejudicial constitutes a reasonable application of *Strickland* to the facts of the case. As explained by the post-conviction court, none of the defense attorneys were deficient at the pre-trial, trial, and appellate stages. Moreover, as the post-conviction court noted, Joyner failed to establish prejudice because "evidence at trial was overwhelming to the extent of witness identifications and DNA evidence linking Petitioner to the crime." ECF No. 9-

19, p. 6. Joyner's trial counsel's testimony at the post-conviction hearing was that "Joyner was identified at the scene of the crime by a third party," and an hour later was identified by an independent witness. ECF No. 26-2, p. 101. In the absence of proof of deficient conduct or prejudice, it was, under *Strickland*, reasonable for the state court to reject Joyner's ineffective assistance of counsel claims.

B. Prosecutorial Misconduct

It is undisputed that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Likewise, it has long been held that prosecutors are held to a high standard of fairness. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). In order to establish prejudicial misconduct on the part of the prosecutor, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted); *United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010). In order to reverse a conviction based upon a claim of prosecutorial misconduct, Petitioner "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'" *Caro*, 597 F.3d at 624-25 (quoting *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002)).

Joyner claims that during his criminal trial, the prosecutor committed a *Brady* violation by withholding evidence that one of the State's key witnesses was shown a photo array "once at his home" prior to positively identifying Joyner in a second photo array shown at the police

station.  ECF No. 1-1, p. 2.  Joyner also claims that the prosecutor improperly compelled perjured testimony regarding that photo array, as well as false testimony regarding the State's DNA evidence.  *Id.*

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."  *Brady*, *supra*, 373 U.S. at 87.  "The *Brady* rule is based on the requirement of due process.  Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur."  *United States v. Bagley*, 473 U.S. 667, 675 (1985).  In order to prevail on a *Brady* claim, it must be established that the evidence at issue is both favorable to the defense and that the unavailability of the evidence calls into question the result of the trial.  *Id.* at 678.  There is no requirement that the guilty finding must be overturned unless suppression of the impeachment evidence so limited the defense's ability to cross-examine an accusing witness that "its suppression undermines confidence in the outcome of the trial."  *Id.*

During the post-conviction proceeding, the prosecutor at Joyner's trial stated that she could not recall the witness's and detective's testimonies regarding the photo array identification, but acknowledged that what was reflected in the trial transcript was correct.  ECF No. 26-2, p. 74.  Joyner then noted that the detective initially stated that he showed the photo array to the witness at the witness's house but later had a "sudden change of story" to match the witness's testimony that the identification was made at the police station.  *Id.* at 90.  The prosecutor testified, however, that the document indicating the names of the persons present during the photo array identification "was provided to the defense," so as to clear up any confusion.  *Id.* at 83.  As Joyner was unable to prove that the evidence at issue would have been favorable to the

defense, let alone that it was suppressed by the prosecution, the post-conviction court correctly found that his allegation of a *Brady* violation was meritless. This finding is supported by the transcripts and withstands scrutiny.

With regard to the DNA evidence, Joyner vaguely alleges that the prosecutor "compell[ed] two detectives to give known perjured testimony." ECF No. 1-1, p. 2. During the post-conviction hearing, Joyner seemed to argue that there were inconsistencies regarding the time and date the detectives found the baseball cap that was tested for DNA. By presenting a document prepared by one of the detectives who recovered the cap, Joyner established that the cap was seized on November 21, 2009. ECF No. 26-2, pp. 84-86. However, when Joyner asked the prosecutor whether that date was consistent with information provided in the warrant, the prosecutor stated that "[t]here is no date in the warrant as to when they found the hat inside the vehicle." *Id.* at p. 86.

The Supreme Court has "consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). A petitioner making such a claim must show more than a recantation by a witness or inconsistencies in the witness's testimony. He must show that the prosecutor knew the testimony was false. *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987).

Here, Joyner is unable to provide evidence that the detectives testified falsely or that the prosecutor knew that the detectives testified falsely, much less had any role in orchestrating any false testimony. Joyner's arguments are based solely on perceived inconsistences in the evidence, which are insufficient to show a constitutional violation.

C.    Cognizability

For a claim of relief under presented under § 2254 to be cognizable for review, the petitioner must assert a violation of federal law.  *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).

Violation of a state law that does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice."  *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  If a claim "rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review."  *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (citing *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998)).

Joyner claims that the trial court erred when it failed to give him credit at sentencing for time spent while being held on a detainer.  ECF No. 1-1, p. 2.  Sentence calculation and/or construction issues generally are issues of state law and do not give rise to a federal question.  *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas corpus court to reexamine state court determinations on state law questions.").  To the extent that the court's ruling pertains to Maryland law as it relates to sentencing provisions and jurisdiction in criminal cases, it is not the role of this Court to second guess those conclusions.  *See Rose v. Hodges*, 423

U.S. 19, 21-22 (1975).  As his claim is not cognizable, Joyner fails to assert a basis for habeas corpus relief.

**IV.     Conclusion**

For the foregoing reasons, Joyner's Petition for Writ of Habeas Corpus shall be DENIED and DISMISSED, and Joyner's Motion for Respondents to Comply with Court's Orders and Motion for Default Judgment shall be denied.[1]  A separate order follows.

Dated this 24th day of January, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[1] Joyner acknowledges that Respondents have partially complied with the Court's previous order by sending portions of the file and transcripts, but asks that they "fully comply" by providing "exhibits of evidence marked 1-6 and received . . . and all pre-hearing transcripts for case 119139c docket numbers 197, 238, 240 and 248."  ECF No. 31, pp. 2-3.  Because receipt of such documents would have no bearing on Joyner's ability to assert a basis for habeas corpus relief, the Motion for Respondents to Comply with Court's Orders, as well as the Motion for Default Judgment, shall be denied.